WO

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

United States of America,

Plaintiff,

v.

Julian Ismael Loera,

Defendant.

No. CR-13-08209-PCT-GMS

**ORDER**

Pending before the Court is Mr. Julian Loera's appeal from the judgment of United States Magistrate Judge Mark Aspey denying Loera's motion to dismiss for lack of jurisdiction based on his claimed Indian status. (Mag. Doc. 29.)[1] For the following reasons, the Court affirms.

**BACKGROUND**

**I. Procedural Background**

On February 8, 2013, Loera was charged by complaint with assault pursuant to 18 U.S.C. § 113(a)(4) which alleged that Loera, a non-Indian, assaulted, struck, and beat an Indian victim. (Mag. Doc. 1.) Federal subject-matter jurisdiction was supplied by 18 U.S.C. § 1152, which extends the reach of the "general laws of the United States as to the punishment of offenses" committed any place within the jurisdiction of the United States "to the Indian country." Section 1152, however, does not extend such jurisdiction when the offense is "committed by one Indian against the person or property of another

---

[1] Citations to "Doc." refer to filings made to this Court under case number 13-cr-8209. Citations to "Mag. Doc." refer to filings in case number 13-mj-4039.

Indian . . . ." Loera filed a motion to dismiss and argued that the court lacked subject-matter jurisdiction since Loera is an Indian for purposes of § 1152. After a two-day hearing, the Magistrate Judge denied his motion.

A month later, the parties filed a stipulated/joint motion seeking permission to file a superseding Information charging Loera with disorderly conduct (Count 1) and assault (Count 2). The Magistrate Judge granted the stipulation/joint motion. Loera then pleaded guilty to Count 1. The plea agreement preserved Loera's right to appeal "this case on the sole issue of whether the defendant is an Indian for purposes of jurisdiction under 18 U.S.C. § 1152." (Mag. Doc. 41 at 3.) The Magistrate Judge accepted the plea, and Loera eventually was sentenced to time served. (Mag. Doc. 43, 44.)

Loera timely filed his notice of appeal, which the parties fully briefed after the conclusion of an initial stay granted by this Court to allow the Ninth Circuit to consider *en banc* the case of *United States v. Zepeda*, 742 F.3d 910 (9th Cir. 2014).

## II. Factual Background

The Court adopts the factual findings of the magistrate court, none of which was significantly challenged by the parties:

> 1. Defendant was born in 1981 and is 32 years of age. Defendant was born "off" the Fort Mojave Indian Reservation [(the "Tribe")] because there was no hospital on the reservation.
>
> 2. Defendant is, by blood quantum, 3/16 Fort Mojave Indian, all derived from his mother who is an enrolled member of the Fort Mojave Indian Tribe. Defendant's mother's blood quantum is 3/8 Fort Mojave Indian. Defendant's biological father is Hispanic. Defendant does not and has not had contact with his biological father.
>
> 3. Defendant has been denied enrollment as a member of the Fort Mojave Indian Tribe, a federally-recognized tribe. Defendant was denied membership because, pursuant to its Constitution, the tribe requires a 1/4 Fort Mojave blood quantum to be entitled to membership. Defendant was denied enrollment in the Fort Mojave Indian Tribe on or about February 11, 2006. According to his mother, Defendant was denied enrollment in the Fort Mojave Indian Tribe on two other occasions.
>
> 4. Defendant's mother, aunt, grandmother, and son are enrolled members of the Fort Mojave Indian Tribe.
>
> 5. Defendant was raised primarily by his mother and his aunt.

His aunt, an enrolled member of the Fort Mojave Indian Tribe, lives on the Fort Mojave Indian Reservation. Defendant's mother resides near but off the reservation.

6. When Defendant was growing-up he lived a majority of the time on the Fort Mojave Indian Reservation with his aunt, and he also lived for some time off the reservation with his mother.

7. The Fort Mojave Indian Health Center is operated by the Fort Mojave Indian Tribe pursuant to a "638 contract" with the federal government, pursuant to the Indian Self-Determination and Education Assistance Act, Pub. L. No. 93-638, codified at 25 U.S.C. §§ 450, et seq.

8. To be eligible for treatment at the Fort Mojave Indian Health Center, patients must provide either proof of enrollment in a federally-recognized Indian tribe or proof they are descended from a member of a federally-recognized Indian tribe.

9. Defendant is eligible to receive health care treatment from the Fort Mojave Indian Health Center, which has facilities in Needles, California, and Mohave Valley, Arizona. Defendant is eligible for these services because he is a descendant of an enrolled member of a federally-recognized Indian tribe.

10. Defendant received healthcare treatment at the Fort Mojave Indian Health Center in Mohave Valley, Arizona, on at least three occasions in 2008 and on February 24, 2012, and October 31, 2012.

11. Defendant has received services from the Fort Mojave Indian Tribe Behavioral Health Department on at least forty different occasions between July 2, 2007, and February 23, 2010.

12. There is no admissible evidence that Defendant ever received medical service from a federal "Indian Health Services" ("IHS") facility, or that he received services which were paid for by IHS. However, the Court notes that, as a descendant of a member of a federally-recognized Indian tribe, Defendant might be eligible to receive services from IHS. *See* 25 U.S.C. § 1603(13).

13. Defendant attended grade school and most of high school at Arizona public schools that were located off the Fort Mojave Indian Reservation. Defendant did briefly attended high school on the Fort Mojave Indian Reservation after a high school was established on the reservation.

14. Defendant received tutoring services through the Fort Mojave Indian Tribe while he was attending elementary and high school. He received those services through the Fort Mojave Indian Tribe because he is a descendant of an enrolled member of the tribe. Defendant has not received these services since at least the age of 16.

15. As a juvenile, Defendant received breakfast and lunch through the Tribal Nutrition Program.

16. For approximately two years when he was nine to eleven years of age, during the summer, Defendant attended classes at the Fort Mojave Cultural Department.

17. As a juvenile, eighteen separate cause numbers were filed with regard to Defendant in Fort Mojave Tribal Court, including obstruction of police duties and underage consumption of alcohol. As an adult, Defendant has received civil citations from the Tribal Police as a result of his actions on the reservation.

18. Defendant is not fluent in the Fort Mojave Indian language. He knows less than twenty words of the language and is self-taught. His aunt and his mother are not fluent in the language, and very few Fort Mojave Indians speak the language.

19. Defendant has tattoos over much of his body. With the exception of a tattoo of his grandmother, he obtained all of the tattoos while he was serving time in prison. The tattoos were designed by Defendant. One tattoo references the Arizona Village, which is on the Fort Mojave Indian Reservation. Defendant has some tattoos that are reminiscent of Native American culture in general and Defendant has one tattoo depicting Pamela Anderson and one depicting Christina Aguilera.

20. While in prison Defendant participated in sitting in a sweat lodge, which is not a Fort Mojave Indian ritual. Defendant never engaged in this ritual on the Fort Mojave Indian Reservation.

21. Defendant has played a traditional Fort Mojave Indian game called shinny (phonetic). He does not and never has played the game regularly. Because he is a descendant of a tribal member, Defendant can use tribal recreational facilities at no cost, including the use of a golf course and a boat launch located on the Colorado River. Members of the public can also use these facilities but a fee is normally required.

22. Defendant is currently unemployed. Defendant previously worked for his step-father, who is Hispanic, in a landscaping business not affiliated with the Fort Mojave Indian Tribe.

23. The alleged victim in the charged assault is an adult female Native American. She is an enrolled member of the Fort Mojave Indian Tribe and the mother of Defendant's son. The charged assault is alleged to have occurred at Defendant's aunt's house on the reservation.

24. Defendant's son is 15/32 Fort Mojave Indian. Defendant's mother has custody of Defendant's son and they do not live on the Fort Mojave Indian Reservation. Defendant does not contribute financially to the support of his son.

25. Defendant is currently in federal custody in Coconino County, where he is serving a seven-month sentence on a charge of assault on a federal law enforcement officer in violation of 18 U.S.C. § 111(a), which custody arises from his violation of supervised release in that matter.

The matter was prosecuted before this Court.

26. Defendant's Arizona driver's license, issued in October 2012, indicates that he lives in Fort Mohave, Arizona, at his mother's address which is off the Fort Mojave Indian Reservation.

27. Defendant does not have his own residence on the Fort Mojave Indian Reservation.

28. From approximately 2002 through 2007, and 2009 through early 2012, Defendant was in state prison in California on felony assault convictions.

29. Defendant was recently sentenced to five days in jail for a State of Arizona misdemeanor charge of resisting arrest, which was prosecuted in the Bullhead City, Arizona, Justice Court. Defendant pled guilty to this charge on or about February 7, 2013. The crime occurred on the Fort Mojave Indian Reservation at the home of Defendant's aunt.

30. On or about November 5, 2012, at an arraignment for criminal charges in the Fort Mojave Tribal Court, the Tribal Court dismissed the charges against Defendant. The Tribal Court did not recognize criminal jurisdiction over Defendant, because defendant is not an enrolled member of the Fort Mojave Tribe. The tribal prosecutor was granted leave to file a civil complaint against Defendant. The incident that occurred on November 5, 2012, involved the same victim as in the instant case.

31. The Fort Mojave Tribal Police do not have authority to charge non-Indians with criminal violations under the Fort Mojave Tribal Code.

32. Unlike an enrolled tribal member, Defendant is not eligible to seek election for tribal office nor is he eligible to vote in tribal elections. Additionally, unlike an enrolled tribal member, the tribe may remove and exclude Defendant from the Fort Mojave Indian Reservation.

33. There is nothing in the record before the Court to indicate the Bureau of Indian Affairs considers Defendant to be an Indian.

34. Defendant has attended funeral services for Fort Mojave tribal members and in doing so participated in traditional ceremonies for the deceased. These services are generally open to anyone, however, the Court heard testimony that these services are primarily attended by family members, friends, and those residing in the Fort Mojave community (some who are not Native American). Defendant has worn traditional Mojave Indian clothing at the funerals.

35. The Fort Mojave Tribal Police referred the instant criminal case to the United States Attorney's Office for the District of Arizona (Flagstaff Division) because the Fort Mojave Tribal Court has ruled it does not have criminal jurisdiction over Defendant pursuant to the Fort Mojave Tribal Code.

(Mag. Doc. 29 at 8–14.)

**DISCUSSION**

On appeal, Loera raises two challenges to the magistrate court's denial of his motion to dismiss. Loera first argues that the magistrate court misapplied the § 1152 burden-shifting framework by inappropriately placing the ultimate burden-of-persuasion on Loera and not the Government. Loera next argues that in any case the Government presented insufficient evidence to prove beyond a reasonable doubt that he is not an Indian under § 1152.

**I. Legal Standard**

Loera's first challenge, whether the Magistrate Judge failed to properly shift the burden-of-persuasion away from Loera and on to the Government, is reviewed *de novo*. *See United States v. Coutchavlis*, 260 F.3d 1149, 1156 (9th Cir. 2001).

As to Loera's second challenge, the Government charged Loera with a Class B misdemeanor. Upon the filing of Loera's motion to dismiss, the parties agreed that all evidence submitted to the Magistrate Judge during the two-day evidentiary hearing on the motion would be admitted for trial purposes. In its subsequent order on the motion, the court explained that although Loera challenged his Indian status through a motion to dismiss, the court was treating the issue as if it were tried to the court pursuant to Federal Rule of Criminal Procedure 29. (Mag. Doc. 29 at 4 n.2.)

Thus, "[a]lthough jurisdictional questions are ordinarily reviewed *de novo*," because the motion "challenge[d] the sufficiency of the *evidence* underlying a jurisdictional element, [this Court] owe[s] deference to the [magistrate court's] ultimate factual finding[s]." *United States v. Cruz*, 554 F.3d 840, 843–44 (9th Cir. 2009). Accordingly, this Court reviews the court's "decision under the standard applied to sufficiency-of-the-evidence challenges: 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at 844 (citation omitted). The Court thus rejects the Loera's formulation of the appropriate standard of review.

**II. Analysis**

The Ninth Circuit considers two prongs when determining whether an individual qualifies as an Indian under § 1152: "(1) proof of some quantum of Indian blood, whether or not that blood derives from a member of a federally recognized tribe, and (2) proof of membership in, or affiliation with, a federally recognized tribe."[2] *United States v. Zepeda*, 792 F.3d 1103, 1113 (9th Cir. 2015) (en banc); *see also United States v. Bruce*, 394 F.3d 1215, 1223 (9th Cir. 2005). An individual claiming Indian status must meet both factors.[3] *Bruce*, 394 F.3d at 1223.

The first prong may be satisfied by the existence of just "some blood, [thus] evidence of a parent, grandparent, or great-grandparent who is clearly identified as an Indian is generally sufficient to satisfy this prong." *Id.* The Government concedes that Loera meets the first prong and thus it is not at issue here. (Doc. 24 at 12; Mag. Doc. 29 at 14:20–21.)

The second prong is further divided into four factors expressed "in declining order of importance: (1) enrollment in a federally recognized tribe; (2) government recognition formally and informally through receipt of assistance available only to individuals who are members, or are eligible to become members, of federally recognized tribes; (3) enjoyment of the benefits of affiliation with a federally recognized tribe; [and] (4) social recognition as someone affiliated with a federally recognized tribe through residence on a reservation and participation in the social life of a federally recognized tribe." *Zepeda*, 792 F.3d at 1114 (citing *Bruce*, 394 F.3d at 1224). These factors are not exclusive. *United States v. LaBuff*, 658 F.3d 873, 877 (9th Cir. 2011) (citation omitted).

Finally, *Bruce* delineated a burden-shifting framework to govern its two-prong

---

[2] The Fort Mojave Indian Tribe is a federally recognized tribe. (Mag. Doc. 29 at 8.)

[3] Although *Zepeda* clarified the *Bruce* factors in the context of 18 U.S.C. § 1153, the *Bruce* factors apply equally to both § 1152 and § 1153. *See United States v. Maggi*, 598 F.3d 1073, 1082 (9th Cir. 2010), *overruled in part by Zepeda*, 792 F.3d at 1113 ("*Bruce* supplies the relevant framework for determining whether a defendant is an Indian under §§ 1152 and 1153."); *see also Cruz*, 554 F.3d at 845.

analysis. *See Bruce*, 394 F.3d at 1222–23. The framework "is in the nature of an affirmative defense." *Id.* at 1223. It is a two-part shift. Loera initially carries the burden-of-production, and must put forth "enough evidence of [his] Indian status to permit a fact-finder to decide the issue in [his] favor." *Id.* Once this initial burden is met, the Government "retains the ultimate burden of persuasion" and must prove to the fact-finder, beyond a reasonable doubt, that Loera does not qualify as an Indian. *Id.* (citations omitted).

**A. The Magistrate Judge Properly Applied *Bruce's* Burden-shifting Framework.**

The magistrate court concluded that Loera had "met his [initial] burden of proof . . . that [he] is an 'Indian'[,]" and thus "shifted [the burden] to the [G]overnment to prove beyond a reasonable doubt" that Loera is not an Indian. (Mag. Doc. 29 at 14.) Because the burden was the Government's, Loera takes issue with two sentences in the magistrate court's order that begin with "Defendant has not established[,]" which he argues demonstrate the court's improper application of the *Bruce* burden-shifting framework, *i.e.*, the court failed to actually shift the burden to the Government. (*See id.* at 16:5–7, 19:22–25.)

This is not the case. The order came after two days of hearings where both parties presented their evidence as to Loera's Indian status under § 1152. The order demonstrates that the court dutifully analyzed the admitted evidence, weighed the party's arguments in favor of their respective positions, and held that "after balancing all of the factors in the *Bruce* test, the Court concludes the government has met its burden of proof and shown beyond a reasonable doubt that Defendant is a 'non-Indian'." (*Id.* at 20.) Loera presents no evidence beyond the two cited sentences that the court, during the two-day evidentiary hearing or in its final analysis, imposed the ultimate burden on Loera. In fact, the hearing demonstrates that Loera met his initial but lessened burden of some Indian connection and then, once the burden shifted, the Government met its burden of establishing that Loera does not have Indian status. The court committed no error in its

application of *Bruce's* burden-shifting framework.

**B. A Rational Trier of Fact Could Have Found Beyond a Reasonable Doubt that Loera Does Not Qualify as an Indian Under § 1152.**

**1. Loera is not an enrolled member of the Fort Mojave Tribe.**

Enrollment in a federally recognized tribe is the "first and most important" of the *Bruce* factors. *See*, *e.g.*, *Cruz*, 554 F.3d at 847. It is not, however, determinative, in and of itself, of Indian status. *Bruce*, 394 F.3d at 1224 (citation omitted). It is undisputed here that Loera is not an enrolled member of the Fort Mojave Tribe nor is Loera eligible to become a member since under the Tribe's Constitution his 3/16th blood quantum falls below the 1/4th blood quantum threshold. As the magistrate court noted, he has unsuccessfully sought enrollment in the Tribe on three separate occasions. As such, Loera fails to meet the first *Bruce* factor.

Nevertheless, through his mother, Loera is a descendant of the Tribe. "[W]hile descendant status does not carry similar weight to enrollment . . . it reflects some degree of recognition" by the Tribe. *Maggi*, 598 F.3d at 1082. Yet like tribal enrollment, it is not dispositive of Indian status. *Cruz*, 554 F.3d at 847 (*Bruce* makes clear "that tribal enrollment, and therefore *a fortiori* descendant status, is not dispositive of Indian status . . . .").

**2. Loera received no assistance made available only to members or eligible members of the Tribe.**

*Zepeda* altered the language of the second factor of the *Bruce* test and clarified that the factor focuses on whether the individual received assistance reserved *only* for tribal members or those eligible to become tribal members. *Zepeda*, 792 F.3d at 1114. This alteration is not trivial as the original language from *Bruce* tested whether the individual received assistance "reserved only to Indians[.]" *Bruce*, 394 F.3d at 1224.

Here, the evidence indicates that on multiple occasions Loera received medical assistance as an adult from the Fort Mojave Indian Health Center and the Fort Mojave

Indian Tribe Behavioral Health Department.[4] Loera admits that he is eligible to receive such assistance because he is a descendant of an enrolled member of the Fort Mojave Tribe. That assistance is thus not reserved *only* for members or persons eligible to become members of the Tribe. Accordingly, Loera does not satisfy the second *Bruce* factor.[5]

**3. Loera enjoys some benefits of affiliation with the Tribe.**

Loera argues that his receipt of Tribal tutoring services in elementary and high school, his receipt of meals during his childhood through the Tribe's nutritional services program, his attendance at summer classes as a child put on by the Tribe's cultural department, his receipt of healthcare services, and his ability to access at no cost the Tribe's recreational facilities all support finding that he satisfies the third *Bruce* factor. (Doc. 16 at 31–39.)

Loera received many such benefits in the distant past; they thus have limited relevance to the present determination of his Indian status. The Ninth Circuit in *Zepeda* made clear that a "defendant must have a *current* relationship with a federally recognized tribe." *Zepeda*, 792 F.3d at 1113 (emphasis added). In the context of § 1153, *Zepeda* directed that "the government must prove that the defendant was an Indian at the time of the offense with which the defendant is charged. If the relevant time for determining

---

[4] As to assistance provided by an "Indian Health Services" ("IHS") facility, while Loera put on testimony from his mother that he received such assistance, the Magistrate Judge ruled that Loera presented "[n]o admissible evidence that [he] ever received medical service from a federal [IHS] facility, or that he received services which were paid for by IHS." (Mag. Doc. at 9–10.) This Court does not disturb the Magistrate Judge's factual findings. *See Cruz*, 554 F.3d at 843–44. Nonetheless, even if Loera received care from an IHS facility made available to descendants of tribal members, such assistance still does not meet the second *Bruce* factor since it is not reserved *only* for members or those eligible to become members.

[5] Loera argues that *Zepeda's* modification to the second *Bruce* factor is "perplexing" because the modification creates a "category populated by no benefits[,]" or the modification effectively conflates the first and second factors. (Doc. 16 at 26 n.153.) That assessment is not accurate. Certain benefits are available only to tribal members or those eligible to become members while other benefits are more broadly available. To the extent one is not a member, but receives benefits reserved for those eligible to become members, it presumably demonstrates a stronger case for Indian status than does, for example, the receipt of benefits eligible for descendants of tribal members.

Indian status were earlier or later, a defendant" would not be put on proper notice of the consequences of his crime. *Id.*

This admonition does not render the benefits Loera received as a child immaterial, but *Zepeda's* guidance does suggest that a reviewing court should attribute greater weight to evidence of the defendant's Indian status that is more contemporaneous with the underlying crime than evidence from a long-time past. Therefore, while Loera received tutoring, meals, and summer classes from the Tribe during his childhood, those benefits weigh little on the overall calculation of his Indian status.

On the other hand, the Magistrate Judge found that Loera received medical care at the Fort Mojave Indian Health Center and the Fort Mojave Indian Tribe Behavioral Health Department on multiple occasions as an adult. Where a defendant "frequently received healthcare services on the basis of his status as a descendent of an enrolled member, he enjoyed the 'benefits' of his tribal affiliation, as required by *Bruce's* third factor." *LaBuff*, 658 F.3d at 878. Additionally, the findings suggest that Loera utilized the Tribe's golf course and boat launch as an adult. The facilities cost a fee to the public but may be used for free by Tribal members and descendants of Tribal members.

The Government concedes that Loera does enjoy certain benefits due to his affiliation, as a descendant, with the Tribe, and as such Loera satisfies *Bruce's* third factor. Nevertheless, because the vast majority of these benefits are not currently being received or offered, because they were received not in recognition of Indian status but rather in recognition of descendant status, and because they only go to the third *Bruce* factor of four (each factor declining in importance), they do not suggest a basis of doubt sufficient to conclude that the Government failed to meet its burden of demonstrating Loera's non-Indian status beyond a reasonable doubt. *See Zepeda*, 792 F.3d at 1114.

**4. Loera's residence on the reservation and participation in other social activities evidence a degree of social recognition by the Tribe.**

The final and "least important of the four *Bruce* factors" requires a showing of "social recognition as someone affiliated with" the Tribe "through residence on a

reservation and participation" in Tribal social life. *Cruz,* 554 F.3d at 848; *see also Zepeda*, 792 F.3d at 1114. The examination of social recognition is not only from the perspective of the Tribe, but the "the extent to which an individual considers himself an Indian-whether by deciding, for example, to 'reside[ ] on a reservation,' to 'participat[e] in Indian social life,' or to 'recei[ve] assistance reserved only to Indians,' . . . is [also] most certainly relevant in determining Indian status." *Cruz*, 554 F.3d at 849–50 (citation omitted).

Loera chose to reside at his aunt's house on the Tribe's reservation for the majority of his life while not incarcerated. Loera has not spent his entire life living on the reservation, however, spending some time with his mother who lives close but not on the reservation. Loera also raises other evidence that he argues satisfies *Bruce's* fourth factor, including: (1) he played the traditional Tribal game of shinny; (2) he attended Tribal funerals; (3) he participated in traditional sweat lodge ceremonies while in prison; and (4) his mother, aunt, grandmother, and son are enrolled members of the Tribe.[6]

On the other hand, the Government highlights that Loera was barred from seeking Tribal office or voting in Tribal elections, he chose to work for a landscaping business off the reservation, and he attended all of grade school and most of high school off the reservation.

On balance, while there is evidence that Loera participated in Tribal social activities, his participation is not significant and does not support the inference of a

[6] Further, Loera's body is heavily tattooed. Many of Loera's tattoos represent an aspect of Indian culture generally or Fort Mojave Indian Life. Loera also has two tattoos of American pop-stars. Loera obtained all of his tattoos but one while in prison. Loera cites *Cruz* and asserts that his decision to cover his body in Indian related tattoos indicates the extent to which he considers himself a Fort Mojave Indian. *See Cruz*, 554 F.3d at 849–50. *Cruz*, however, does not state that any and all self-expression or self-identification of Indian status is relevant to *Bruce's* fourth factor. Rather, *Cruz* credits self-expression or self-identification that is coupled with some degree of Tribal assent or custom, *i.e.*, living on the reservation, participating in social activities, receiving benefits. Tattooing one's body, although possibly indicative of one's personal connection to and affinity for one's culture (or one's musical preferences), does not involve the Tribe or tribal customs in any meaningful way such that it indicates the Tribe's social recognition of the individual. As such, Loera's decision to represent the Fort Mojave Indians and other Indian culture on his body is not significantly relevant to *Bruce's* fourth factor.

strong social recognition with or by the Tribe. For example, although Loera played the traditional game shinny, he did not play it regularly. While Loera attended Tribal funerals and took part in related traditional ceremonies, funerals were generally open to anyone. Loera also participated in traditional sweat lodge ceremonies, yet those ceremonies only took place in prison, and they were not part of the Tribe's religion or culture. Finally, the Court does not recognize the import of the fact that Loera's son and some of his relatives are members of the Tribe—that fact is unrelated to whether the Tribe socially recognizes Loera as an Indian. In the end, Loera's decision to live on the reservation, and the Tribe's acceptance of that decision, support finding a modest level of social recognition under *Bruce's* fourth factor.

**5. Whether the Tribal Court exercised criminal jurisdiction over Loera's juvenile offenses weighs little on the Court's determination of Loera's Indian status.**

*Bruce's* four factors are not exclusive; thus evidence that the Tribe has previously exercised criminal jurisdiction over Loera in the tribal courts lends some support for tribal recognition. *See Bruce*, 394 F.3d at 1226–27; *LaBuff*, 658 F.3d at 879. Here, however, the Magistrate Judge found that "the Fort Mojave Indian Tribe has not assumed tribal criminal jurisdiction over [Loera], indeed it has steadfastly refused to do so." (Mag. Doc. 29 at 13, 14, 18.)

Loera put on evidence that he was criminally prosecuted by the Tribe as a juvenile, and asserts that such an assumption of jurisdiction should favor an affirmative finding of Indian status. On appeal, Loera contests the court's finding that Loera's juvenile record, which included numerous proceedings in front of the Fort Mojave Juvenile Court that seemed criminal in nature, were in fact, under the Fort Mojave Indian Tribal Code, civil in nature. (*Id.* at 18 n.9.) Loera cites to the testimony of two Tribal police officers, testimony already presented to and analyzed by the court and discussed in its order denying Loera's motion. In fact, in a supplemental stipulation filed after the court ruled on Loera's motion, the parties submitted the Tribe's Children's Article.

(Mag. Doc. 31 at Ex. B.) The Children's Article governs the Tribe's adjudication of issues related to its children.[7] (*Id.*) On a second look, the court concluded that "nothing in the 'Children's Article' of the Fort Mojave Indian Tribe Law and Order Code counters the Court's prior conclusion that the juvenile proceedings involving Defendant were civil in nature." (Mag. Doc. 36 at 2.) Under the deferential standard applied to the lower court's factual findings, there is no basis on which to question or alter the Magistrate Judge's factual findings on this point. *See, e.g.*, *United States v. Male Juvenile*, 280 F.3d 1008, 1023 (9th Cir. 2002) ("Strictly speaking, juvenile delinquency proceedings are civil rather than criminal proceedings." (citation omitted)).

Even assuming the Tribe exercised jurisdiction over Loera during his youth, that does little to indicate the Tribe's current recognition of his status as an Indian, especially in light of its present decision to not exercise jurisdiction over this case and a another recent case in November 2012. *See Zepeda*, 792 F.3d at 1113 (Loera "must have a current relationship" with the Tribe.). Further, Loera's juvenile record, assuming it indicates an assumption by the tribe of criminal jurisdiction, is "not conclusive of Indian status" and really only goes to his burden of production, which has been met. *See Bruce*, 394 F.3d at 1227. Ultimately, whether the Tribe did or did not exercise jurisdiction over Loera as a juvenile bears little to no weight on this Court's review of the Magistrate Judge's determination of Loera's Indian status.

**CONCLUSION**

Loera does not meet the first two and most important factors of *Bruce's* second prong. And while evidence supports finding that he did satisfy the third and fourth *Bruce* factors, the Government has successfully demonstrated that Loera's satisfaction of those factors is weak. In the end, accounting for the descending level of importance given to each *Bruce* factor, and viewing the evidence in the light most favorable to the Government, a rational trier of fact could have found beyond a reasonable doubt that

[7] Loera raises a constitutional challenge to the Tribal Code's treatment of juvenile cases. (Doc. 16 at 48–49.) That issue was not part of Loera's original motion, was not part of the magistrate court's decision, and is thus not part of this appeal.

Loera does not qualify as an Indian. *See Cruz*, 554 F.3d at 844. Accordingly, the Court affirms the decision of the magistrate court below; the exercise of federal jurisdiction over this case was appropriate pursuant to § 1152.

**IT IS THEREFORE ORDERED** that the decision of the magistrate court is **AFFIRMED** (Mag. Doc. 29). The Clerk of Court is directed to terminate this appeal.

Dated this 7th day of June, 2016.

Honorable G. Murray Snow
United States District Judge